UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JENNIFER J. MAYNARD,<br><br>              Plaintiff,<br><br>     v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>              Defendant. | CASE NO.    C04-5233RJB<br><br>REPORT AND RECOMMENDATION<br><br>Noted for July 29, 2005 |

Plaintiff, Jennifer J. Maynard, has brought this matter for judicial review of the denial of her application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Robert J. Bryan's review.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

Plaintiff currently is thirty-four years old.[1] Tr. 53. She completed the ninth grade, but later received

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

1 a general equivalency diploma. Tr. 78, 498.  She has past work experience as a motel maid and dishwasher.
2 Tr. 78.

3      On October 7, 1994, plaintiff protectively filed an application for SSI benefits, alleging disability as
4 of October 1, 1994, due to back pain. Tr. 13, 34.  That application was denied initially and on
5 reconsideration. Tr. 13, 38-42, 53-56.  After plaintiff's request for a hearing was granted, her application
6 was remanded for consideration of new evidence of a mental impairment. Tr. 13, 112-13.  Because on
7 remand evidence of plaintiff's mental impairments still was not considered, plaintiff's application once more
8 was remanded for consideration of that evidence. Tr. 13, 115-18, 161-62.  Her application again was denied
9 on reconsideration. Tr. 193-95, 203.

10      Plaintiff requested another hearing, which was held before an administrative law judge ("SLJ") on
11 May 19, 1999. Tr. 299, 492.  On August 19, 1999, the ALJ issued a decision, finding plaintiff not disabled
12 because she was capable of performing her past relevant work as a motel maid. Tr. 312-13.  The Appeals
13 Council granted plaintiff's request for review, remanding the matter to obtain additional medical evidence to
14 further clarify the nature and severity of her mental impairments. Tr. 327-28.

15      On remand from the Appeals Council, another hearing was held before a different ALJ on August 5,
16 2002. Tr. 535.  At the hearing, plaintiff, represented by counsel, appeared and testified, as did plaintiff's
17 mother and a vocational expert. Tr. 535-81.  On November 12, 2002, the ALJ issued an opinion, finding
18 plaintiff not disabled. Tr. 31-32.  Specifically, the ALJ found in relevant part that:

    (1)    at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

    (2)    at step two, plaintiff had "severe" impairments consisting of a depressive disorder, a post-traumatic disorder, a panic disorder with agoraphobia, and alcohol abuse by history;

    (3)    at step three, plaintiff's mental impairments did not meet or equal the criteria of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

    (4)    at step four, plaintiff retained the residual functional capacity to perform a modified range of sedentary work, and, therefore, was unable to perform any of her past relevant work; and

    (5)    at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Id.  On February 20, 2004, the Appeals Council denied plaintiff's request for review, making the second ALJ's decision the Commissioner's final decision. Tr. 6-8; 20 C.F.R. § 416.1481.

REPORT AND RECOMMENDATION
Page - 2

a general equivalency diploma. Tr. 78, 498. She has past work experience as a motel maid and dishwasher. Tr. 78.

On October 7, 1994, plaintiff protectively filed an application for SSI benefits, alleging disability as of October 1, 1994, due to back pain. Tr. 13, 34. That application was denied initially and on reconsideration. Tr. 13, 38-42, 53-56. After plaintiff's request for a hearing was granted, her application was remanded for consideration of new evidence of a mental impairment. Tr. 13, 112-13. Because on remand evidence of plaintiff's mental impairments still was not considered, plaintiff's application once more was remanded for consideration of that evidence. Tr. 13, 115-18, 161-62. Her application again was denied on reconsideration. Tr. 193-95, 203.

Plaintiff requested another hearing, which was held before an administrative law judge ("SLJ") on May 19, 1999. Tr. 299, 492. On August 19, 1999, the ALJ issued a decision, finding plaintiff not disabled because she was capable of performing her past relevant work as a motel maid. Tr. 312-13. The Appeals Council granted plaintiff's request for review, remanding the matter to obtain additional medical evidence to further clarify the nature and severity of her mental impairments. Tr. 327-28.

On remand from the Appeals Council, another hearing was held before a different ALJ on August 5, 2002. Tr. 535. At the hearing, plaintiff, represented by counsel, appeared and testified, as did plaintiff's mother and a vocational expert. Tr. 535-81. On November 12, 2002, the ALJ issued an opinion, finding plaintiff not disabled. Tr. 31-32. Specifically, the ALJ found in relevant part that:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of a depressive disorder, a post-traumatic disorder, a panic disorder with agoraphobia, and alcohol abuse by history;

(3) at step three, plaintiff's mental impairments did not meet or equal the criteria of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff retained the residual functional capacity to perform a modified range of sedentary work, and, therefore, was unable to perform any of her past relevant work; and

(5) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Id. On February 20, 2004, the Appeals Council denied plaintiff's request for review, making the second ALJ's decision the Commissioner's final decision. Tr. 6-8; 20 C.F.R. § 416.1481.

On April 26, 2004, plaintiff filed a complaint with this court seeking judicial review of the second ALJ's decision.[2] (Dkt. #1). She argues that decision should be reversed and remanded for an award of benefits for the following reasons:

(a) the ALJ erred in not finding plaintiff's physical impairments "severe" at step two of the disability evaluation process;

(b) the ALJ's assessment of plaintiff's residual functional capacity did not include all relevant mental functional limitations;

(c) the ALJ did not provide clear and convincing reasons for rejecting plaintiff's credibiliy;

(d) the ALJ gave inadequate reasons for rejecting the testimony of plaintiff's mother; and

(e) the ALJ erred in finding plaintiff capable of performing other jobs existing in significant numbers in the national economy.

Defendant agrees that the ALJ did not adequately evaluate the nature and severity of plaintiff's mental limitations, but argues that this matter should be remanded for further administrative proceedings. For the reasons set forth below, however, the undersigned recommends the court reverse the ALJ's decision and remand this matter to the Commissioner for an award of benefits.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than

---

[2] As indicated, plaintiff's complaint was filed more than sixty days after the Commissioner issued her final decision. A party may obtain judicial review of the Commissioner's final decision by commencing a civil action in federal court "within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow." 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.981, 404.982, 416.1481, 416.1482. This "sixty-day time limit is not jurisdictional, but is instead a statute of limitation which the Secretary may waive." Banta v. Sullivan, 925 F.2d 343, 345 (9th Cir. 1991). As such, failure to file within the sixty-day time limit is an affirmative defense, which "is properly raised in a responsive pleading." Vernon v. Heckler, 811 F.2d 1274, 1278 (9th Cir. 1987) (citing Federal Rule of Civil Procedure 8(c). Because the Commissioner failed to raise the statute of limitations as an affirmative defense in her responsive pleading, the issue is waived, and the undersigned will deal with this matter on its merits.

REPORT AND RECOMMENDATION
Page - 3

one rational interpretation, the court must uphold the Commissioner's decision. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

I.    <u>The ALJ Erred in Finding Plaintiff Had No Severe Physical Impairments</u>

To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step sequential evaluation process. 20 C.F.R. § 404.1520. At step two of this process, the ALJ must determine if an impairment is "severe". <u>Id.</u> An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. §§ 416.920(c), 416.921(a); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." <u>See</u> SSR 85-28, 1985 WL 56856 *3; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996); <u>Yuckert v. Bowen</u>, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect [her] ability to perform basic work activities." <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1159-60 (9th Cir. 2001); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998).

Plaintiff argues the ALJ erred in finding she did not have any severe physical impairments. With respect to those impairments, the ALJ found as follows:

> In considering [the] claimant's alleged physical impairments, it is noted that much of [the] claimant's evidence relating to her physical problems stem from the early 1990's, and she was found in an earlier decision to have a severe pain disorder and scoliosis. Ms. Maynard was examined and treated by multiple physicians over the years, but never diagnosed with an impairment that would prevent her from performing all work. It was recommended to her on several occasions that she increase her activity and it was felt that more activity would help to relieve her problems. She was given medication and sent to physical therapy, and was to [sic] told to cease smoking on several occasions. The last time she was referred to physical therapy, she did not attend. Past records indicate Dr. [Wendell C.] Kirkpatrick found claimant could perform light work (Exhibit 36). Dr. [Charles J.] Larson had also treated claimant with a bracing system, as well as physical therapy, but found the only work she would be unable to perform would be work involving prolonged standing, bending or lifting. (Exhibit 21). Dr. [Gary] Chiatrottino also found claimant could perform light work. (Exhibit 24). As well, Dr. [Chris] Covert-Bowlds, also found she could do light work (Exhibit 55). Dr. [David W.] Drobnicki found claimant could perform sedentary work (Exhibit 67). Consequently, the claimant has not demonstrated any severe physical impairment, and has not seen a physician in the recent past with complaints of physical problems, only of mental issues. Therefore, the claimant is found not to have any severe physical problems based on the record.

Tr. 24-25. Plaintiff argues the ALJ's findings are not supported by substantial evidence. The undersigned

REPORT AND RECOMMENDATION
Page - 4

1   agrees, and also finds the ALJ did not apply the proper legal standard.

2   The above step two inquiry is a *de minimis* screening device used to dispose of groundless claims. Smolen, 80 F.3d at 1290. Instead of using this standard, however, the ALJ appears to have concluded that because a number of physicians found plaintiff remained capable of performing sedentary and/or light work, her physical impairments were not severe. While that standard may be appropriate for a step four or five analysis, it is much higher than the *de minimis* standard used at step two. In addition, while plaintiff may not have been entirely compliant with recommended treatment, such lack of compliance bears more on her credibility than on the fact she has impairments that have more than a minimal effect on her ability to perform basic work activities.

3   The substantial evidence in the record, furthermore, clearly indicates plaintiff does have physical limitations that have more than a minimal effect on her ability to perform basic work activities. Indeed, the very fact that Drs. Kirkpatrick, Chiatrottino, Covert-Bowlds, and Drobnicki all found plaintiff to be limited to sedentary to light work, and that Dr. Larson found her to be unable to perform work involving prolonged standing, bending or lifting, shows she has significant, i.e. "severe," physical limitations. Other medical evidence in the record also shows that plaintiff has significant physical limitations that affect her ability to perform basic work activities. See Tr. 46-47, 88-91, 98-99, 103-108, 124, 127-28, 130-31, 133, 135–36, 177-78, 214, 239, 260, 271-76.

4   Finally, although many of the physician opinions in the record concerning plaintiff's ability to work do date from the early to mid-1990's, she was found to be limited to sedentary to light work as late as early November 1998. Tr. 176-83, 271-72, 275-76. Further, contrary to the ALJ's findings, plaintiff continued to see medical providers, including Dr. Covert-Bowlds, for her physical problems as late as the end of June 2002. See Tr. 258-59, 396-97, 412, 416, 427-29, 436-37, 440, 454. This is not to say that the ALJ erred in finding plaintiff not disabled because of her physical impairments. Rather, the ALJ improperly found those impairments to be not severe at step two of the disability evaluation process.

II.   <u>The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity</u>

If a disability determination "cannot be made on the basis of medical factors alone," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity

assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. The claimant's residual functional capacity assessment thus is what he or she "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. The ALJ, therefore, must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ assessed plaintiff with the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform a range of sedentary exertional work activity. . . . In addition, the claimant must have the opportunity to sit or stand at will. It is also noted Ms. Maynard has some non-exertional limitations as well, the ability to perform no more than simple work with little interaction with people.

Tr. 28. Plaintiff argues the ALJ erred in assessing her with the above residual functional capacity, because the ALJ failed to include in that assessment a number of mental functional limitations found by her mental health providers. The undersigned agrees.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, therefore, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence."

REPORT AND RECOMMENDATION
Page - 6

1  Sample, 694 F.2d at 642.  Further, the court itself may draw "specific and legitimate inferences from the
2  ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

3        The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of
4  either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a
5  treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and
6  legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the
7  ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739
8  F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain
9  why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07
10 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

11       In general, more weight is given to a treating physician's opinion than to the opinions of those who
12 do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of
13 a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings."
14 Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th
15 Cir. 2001); Magallanes, 881 F.2d at 75.  An examining physician's opinion is "entitled to greater weight
16 than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A nonexamining physician's
17 opinion may constitute substantial evidence if "it is consistent with other independent evidence in the
18 record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

19     A.    Dr. Conaway

20       Plaintiff argues that while the ALJ adopted the opinion of Linda Conaway, Ph.D., as controlling and
21 incorporated it into his decision, the ALJ failed to include in his assessment of plaintiff's residual functional
22 capacity many of the mental functional limitations Dr. Conaway found she had.  With respect to Dr.
23 Conaway's opinion, the ALJ found as follows:

> I have also considered the opinion of examining psychologist Linda Conaway, Ph.D.  I
> find Dr. Conaway's report to be most convincing.  She has fairly and adequately
> evaluated Ms. Maynard's condition and found significant limitations.  However, she has
> also found the claimant to be excessive in her complaints and noncompliant with
> treatment.  More importantly, she has found her impairment to be not as severe as the
> claimant has alleged.  I adopt her opinion as the controlling opinion and incorporate it
> into my decision.

28 Tr. 28-29.

REPORT AND RECOMMENDATION
Page - 7

Dr. Conaway opined that plaintiff had only a "fair" (defined as the ability to perform "satisfactorily some of the time") ability to: maintain attention and concentration for extended periods, work with or near others without being distracted by them, and complete a normal workday and workweek. Tr. 347.  Plaintiff argues the ALJ erred by not making any allowance for these limitations in assessing her residual functional capacity.  The undersigned agrees.  As noted above, the ALJ adopted Dr. Conaway's opinion as controlling and incorporated it into his decision.  The ALJ, however, did not explain why he then failed to adopt these mental functional limitations.

Although Dr. Conaway may not have found plaintiff's impairments to be as severe as alleged, she still found her to have the above limitations.  Accordingly, the ALJ failed to provide sufficient reasons for rejecting them.  For the same reason, the ALJ erred in not adopting Dr. Conaway's finding that plaintiff "would likely have difficulties working around men." Tr. 356.  The ALJ's finding that plaintiff should have "little interaction with people," furthermore, does not mitigate this error, as even under that limitation she could still be forced to interact with men. Tr. 28.

B.  Dr. Cosgrove

Plaintiff argues the ALJ erred by not including in his assessment of her residual functional capacity the opinion of Dr. Lisa M. Cosgrove that she would need to work in a structured supportive environment.  Specifically, Dr. Cosgrove opined as follows:

> She does have the ability to perform simple and repetitive tasks.  Regarding detailed and complex tasks, these she could probably perform in a structured supportive work environment.  The claimant has a low frustration tolerance and needs to learn things slowly.  If pressured, she will become frustrated, angry, and in short quit.  Therefore, special and additional supervision would be helpful to the claimant.  The claimant can accept instructions from supervisors.  Again, this should be in a setting where she feels that she will not be subject to perceived criticism.  In a supportive work environment, she likely would interact well with coworkers and the public.

Tr. 345.  The undersigned agrees that the ALJ failed to provide any rationale for excluding this limitation from his assessment of her residual functional capacity.  While the ALJ did limit plaintiff to simple and repetitive work, Dr. Cosgrove felt she should work in a supportive environment for the other reasons noted above as well.

C.  Dr. Bartlett

Plaintiff argues the ALJ erred in not including in his assessment of her residual functional capacity the opinion of Kerry T. Bartlett, Ph.D., that she was "likely to require very gentle and supportive coaching-

based assistance throughout the [work] training process." Tr. 267.  As with Dr. Cosgrove, the ALJ gave no reasons for not adopting this opinion.  As such, the ALJ erred, particularly in light of the fact that another examining medical source, Dr. Cosgrove, provided a substantially similar opinion.

D.     Dr. Parlatore

Plaintiff argues the ALJ erred in failing to provide any rationale for rejecting the marked mental functional limitations found by Dr. Anselm A. Parlatore.  Specifically, Dr. Parlatore found plaintiff to have a marked (defined as a "[v]ery significant interference with basic work-related activities") impairment in her ability to: relate appropriately to co-workers and supervisors; interact appropriately in public contacts; and respond appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 218, 220, 404, 408.  The ALJ gave no reasons for rejecting these limitations.

Other medical sources in the record, furthermore, found plaintiff to be similarly limited.  Thus, for example, William H. Coleman, Ph.D., found her markedly limited in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 338.  Dr. Cosgrove found plaintiff to have only a "fair" (defined as "seriously limited, but not precluded") ability to relate to co-workers and interact with supervisors. Tr. 358.  Dr. Conaway felt that plaintiff would be able to get along with co-workers satisfactorily only some of the time. Tr. 348.  Dr. James R. Adams found her severely (defined as the "inability to perform one or more basic work-related activities") to markedly limited in all three areas. Tr. 466, 479.

While there is other conflicting medical evidence as to whether plaintiff is markedly limited in all of these areas (Tr. 173, 220, 338, 347-48, 358), the ALJ provided no analysis of that evidence.  In any event, the weight of the medical evidence in the record does appear to support the limitations found by Dr. Parlatore.  As such, the ALJ erred in failing to adopt those limitations.

E.     Dr. Coleman

Plaintiff argues the ALJ erred in not adopting the finding of Dr. Coleman that she was markedly limited in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 338.  As discussed above, this limitation is consistent with that found by Dr. Parlatore and other medical sources in the record, and is supported by substantial evidence.  Accordingly, the ALJ erred in not adopting Dr. Coleman's opinion regarding plaintiff's functioning in this area.

### F. Dr. Adams

Lastly, plaintiff argues the Appeals Council erred in not providing any rationale for rejecting the opinions of Dr. Adams regarding her mental functional limitations. Dr. Parlatore first examined plaintiff in mid-January 2003, and thus his opinions were unavailable to the ALJ at the time he issued his decision, although the Appeals Council did have those opinions when it denied plaintiff's request for review. Thus, plaintiff argues that Dr. Adam's opinions, which as indicated above, contain greater limitations than those found by the ALJ, should be credited as true.

The court, however, first must address whether it has the authority to review new evidence that is submitted for the first time to the Appeals Council. It is not clear that this court has the authority to do so without a showing of "good cause" by plaintiff. See Mayes v. Massanari, 276 F.3d 453, 461-63 (9th Cir. 2001) (stating that issue of whether "good cause" is required to review new evidence submitted for the first time to the Appeals Council has not yet been decided).

In Mayes, the Ninth Circuit applied the standard set forth in 42 U.S.C. § 405(g) – which is used to determine whether to remand in light of new evidence submitted for the first time to the federal court – to determine whether remand was appropriate in light of additional evidence submitted for the first time to the Appeals Council. Id. at 461-62. Under this standard, to justify remand, the claimant must show the additional evidence is both "new" and "material" to determining disability, and the claimant "had good cause for having failed to produce that evidence earlier." Id. at 462.

To be material, "the new evidence must bear 'directly and substantially on the matter in dispute.'" Id. (citation omitted). The claimant also must demonstrate a "reasonable possibility" the new evidence "would have changed the outcome of the administrative hearing." Id. (citation omitted). To demonstrate "good cause," the claimant must show the new evidence "was unavailable earlier." Id. at 463. The good cause requirement will not be met by "merely obtaining a more favorable report once his or her claim has been denied." Id.

Here, it appears that plaintiff would be able to meet both the "good cause" and the materiality requirements. None of the opinions provided by Dr. Adams were available prior to mid-January 2003. Also, as discussed above, the marked limitations Dr. Adams found plaintiff to have are in line with those found by Dr. Parlatore and other medical sources in the record. Thus, this does not seem to be a case

REPORT AND RECOMMENDATION
Page - 10

where plaintiff merely has obtained a more favorable report following an adverse decision.

In addition, in light of the errors outlined herein that the ALJ committed in reviewing the evidence in this case, there is at least a "reasonable possibility" that Dr. Adams' opinions would have changed the outcome of the administrative hearing. In any event, even were the court to remand this matter for further proceedings, the ALJ would be able to review those opinions at that time. Accordingly, the undersigned shall consider them here. As explained above, the marked limitations found by Dr. Adams confirm those found by other medical sources in the record. Therefore, they should be considered in assessing plaintiff's residual functional capacity as well.

### III. The ALJ Improperly Assessed Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample, 694 F.2d at 642. The court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

With respect to plaintiff's credibility, the ALJ made the following general findings:

> While it is credible the claimant experiences some pain due to her back problems, and does suffer some mental limitations, as well as fibromyalgia, I find her allegations are excessive and not fully credible in light of the claimant's own description of her activities and life style; discrepancies between her assertions and information contained in the record; findings made on examination; and the opinion of examining psychologist Dr. Conaway.

Tr. 27. Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting plaintiff's credibility. The undersigned agrees.

In addition to the above general findings, the ALJ found plaintiff's testimony to be inconsistent with the opinions of Dr. Conaway and Dr. Cosgrove. Tr. 27-28. A finding that a claimant's symptom complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). Specifically, the ALJ noted that Dr. Conaway's and Dr. Cosgrove's opinions indicate plaintiff is not as limited as she claimed. Id. As discussed above, however, the ALJ erred in evaluating those opinions and excluding the mental functional limitations they found from the assessment of plaintiff's residual functional capacity. Further, as explained below, those and other limitations demonstrate that plaintiff is in fact disabled.

The ALJ also appears to have discounted plaintiff's credibility because of certain inconsistencies between plaintiff's statements and Dr. Conaway's findings. Tr. 27; See Smolen, 80 F.3d at 1284 (ALJ may consider prior inconsistent statements). For example, the ALJ noted that while plaintiff reported she did not like to use the bus due to too many people, Dr. Conaway found her ability to use public transportation to be "fair." Tr. 27. However, it is not clear there is actually any inconsistency here. That is, plaintiff's dislike of using the bus is not necessarily inconsistent with a finding that she is able to do use the bus only some of the time. Tr. 347-48. In addition, the fact that plaintiff reported having panic attacks only twice a month or that she quit her prior jobs for physical reasons, is not inconsistent with those medical findings in the record indicating she is markedly impaired in many mental functional areas.

To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id.

As noted above, the ALJ discounted plaintiff's credibility in part due to her reported "activities and

life style." Tr. 27. The ALJ, however, made no specific findings regarding plaintiff's activities or lifestyle. Such a general conclusion is insufficient to discount a claimant's credibility. Further, while plaintiff has reported engaging in various activities of daily living, she also has reported significant limitations on her ability to complete those activities. Tr. 66-69, 71-73, 110, 244, 344-45, 353-54, 474, 487-88.

The ALJ also discounted plaintiff's credibility in part due to her failure to pursue recommended treatment. Tr. 27-28. Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). On the other hand, if the claimant provides evidence of a good reason for not taking medication, her symptom testimony cannot be rejected because she failed to do so. Smolen, 80 F.3d at 1284.

It is true that there is some evidence in the record that plaintiff has not been entirely compliant with her recommended course of treatment. See Tr. 91, 102, 104, 350, 470. However, there also is evidence in the record that she has been cooperative with her treatment plan. See Tr. 131, 136, 221, 272, 274, 276, 339, 405, 409, 467, 480. In addition, it appears that even if plaintiff was completely compliant in following her recommended treatment, her prognosis would still be poor and she would be significantly limited in terms of her mental functioning for up to a year or more. Tr. 221, 339, 345, 405, 409, 467, 475, 480, 491. For example, Dr. Cosgrove thought that improvement in plaintiff's mental condition would take three years to be seen. Tr. 345. In addition, while it also is true plaintiff has not quit smoking despite the recommendation of her physicians that she do so, she has not alleged having any smoking-related impairments. Thus, this is not a clear and convincing reason for discounting her credibility.

Finally, the ALJ discounted plaintiff's credibility due to a prescription drug problem that some of her physicians had noted, and to her inconsistent statements regarding her drug and alcohol use. While there is evidence in the record that plaintiff has at times provided contradictory statements regarding her use of drugs and alcohol (Tr. 107, 238, 242, 262, 343, 352, 470), there is no such indication with respect to her use of prescription drugs. Thus, it is not clear how having a prescription drug use problem in itself would have an adverse effect on plaintiff's credibility. In addition, with respect to plaintiff's inconsistent statements regarding her drug and alcohol use, the mere fact that one reason for discounting a claimant's credibility is proper does not render an ALJ's credibility determination valid, if that determination is not

REPORT AND RECOMMENDATION
Page - 13

supported by substantial evidence, as is the case here. See Tonapetyan, 242 F.3d at 1148.

IV.     The ALJ Did Not Provide Adequate Reasons for Rejecting the Testimony of Plaintiff's Mother

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001). An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

Plaintiff argues the ALJ failed to consider the testimony of her mother, who testified regarding her observations of plaintiff's physical and mental limitations. Tr. 562-73. While it appears that the ALJ did consider the testimony of plaintiff's mother (Tr. 26-28), the ALJ provided no reasons for not adopting that testimony. Accordingly, the undersigned agrees that the ALJ erred in rejecting this testimony.

V.      The ALJ Erred in Finding Plaintiff Not Disabled at Step Five of the Disability Evaluation Process

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that

1   description those limitations he finds do not exist. <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001)

2   (because ALJ included all limitations that he found to exist, and those findings were supported by

3   substantial evidence, ALJ did not err in omitting other limitations claimant failed to prove).

4       As discussed above, the ALJ failed to provide sufficient reasons for rejecting the opinion of Dr.

5   Conaway that she would likely have difficulty working around men.  At the hearing, the vocational expert

6   testified that the number of workplaces where only women worked would be so small as to "minimize the

7   labor market," to the extent that "the numbers probably would not be sufficient enough to acknowledge"

8   the availability of a job in such a work setting. Tr. 576-77.  Plaintiff argues that based on the vocational

9   expert's testimony, she would be precluded from performing other work.  In light of this evidence and the

10  above discussion, the undersigned agrees.

11      The ALJ also found plaintiff was limited to sedentary and unskilled work. Tr. 32.  Plaintiff argues

12  that based on the serious limitations found by Dr. Cosgrove, she is incapable of performing such work.  Dr.

13  Cosgrove found plaintiff to be "seriously limited" in her ability to: relate to co-workers; use judgment;

14  interact with supervisors; behave in an emotionally stable manner; relate predictably in social situations; and

15  demonstrate reliability. Tr. 358-59.  The ALJ did not provide any reasons for rejecting, or otherwise discuss

16  in his decision, these limitations.  Accordingly, the undersigned finds the ALJ failed to provide valid reasons

17  for not adopting them.

18      Unskilled sedentary work generally requires the ability to engage in the following mental activities:

19      (1)   Understanding, remembering, and carrying out simple instructions;

20      (2)   Making judgments that are commensurate with the functions or unskilled work
              (i.e., simple work-related decisions);

21

22      (3)   Responding appropriately to supervision, co-workers and usual work situations;
              and

23      (4)   Dealing with changes in a routine work setting.

24  SSR 96-9p, 1996 WL 374185 *9; 20 C.F.R. § 416.921(b).  Any "substantial loss of ability to meet any of

25  [the above] several basic work-related activities on a sustained [i.e., full time] basis . . . will substantially

26  erode the unskilled sedentary occupational base and would justify a finding of disability." SSR 96-6p, 1996

27  WL 374185 *9.  SSR 96-9p does not define the term "substantial loss."  However, Dr. Cosgrove's opinion

28  that plaintiff is "seriously limited" in the above similar mental functional areas would seem to be indicative

REPORT AND RECOMMENDATION
Page - 15

1  of a substantial loss in her ability to meet these basic work-related activities. Thus, the undersigned agrees
2  with plaintiff that based on Dr. Cosgrove's opinion, she would not be capable of performing sedentary and
3  unskilled work.

4  In addition, as discussed above, the ALJ erred in not adopting the findings of Dr. Conaway and Dr.
5  Bartlett that plaintiff would require some form of supportive work environment. The vocational expert
6  interpreted the phrase "supportive work environment" to mean a "sheltered workshop environment," which
7  the ALJ found was "not competitive employment." Tr. 579-80. Accordingly, the undersigned agrees with
8  plaintiff that based on the vocational expert's testimony, the ALJ further erred in finding plaintiff capable of
9  performing other work.

10  Plaintiff also argues the ALJ erred in failing to include in the hypothetical question he posed to the
11  vocational expert an option to sit/stand at will. In his assessment of plaintiff's residual functional capacity,
12  the ALJ stated that plaintiff "must have the opportunity to sit or stand at will." Tr. 28. In the hypothetical
13  question he posed to the vocational expert, however, the ALJ stated plaintiff required a "sit/stand option
14  sitting up to an hour at a time with a need to stand and sit back down." Tr. 574. Accordingly, the ALJ did
15  not provide the vocational expert with an accurate portrayal of the residual functional capacity with which
16  he assessed plaintiff. As such, the ALJ erred.

17  Finally, plaintiff argues the ALJ erred by not finding plaintiff would miss at least one day of work
18  per week, which the vocational expert had testified would preclude her from being able to perform other
19  work. Tr. 576. Plaintiff apparently relies on the findings of Drs. Parlatore and Cosgrove that she would be
20  significantly limited in her ability to demonstrate reliability and tolerate the pressures and expectations of a
21  normal work setting to support this argument. It is not clear, however, that such limitations necessarily
22  would result in missing at least one day of work per week. Thus, the undersigned finds the ALJ did not err
23  in failing to adopt the vocational expert's testimony on this issue.

24  VI.   This Case Should Be Remanded for an Award of Benefits

25  The court may remand a case "either for additional evidence and findings or to award benefits."
26  Smolen, 80 F.3d at 1292. Benefits may be awarded where "the record has been fully developed" and
27  "further administrative proceedings would serve no useful purpose." Id.; Holohan v. Massanari, 246 F.3d
28  1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because, based on the testimony of the vocational expert and the ALJ's errors in evaluating the medical and other evidence in the record, it is clear that plaintiff is disabled at step five of the disability evaluation process, there are no outstanding issues to be resolved. Accordingly, remand to the Commissioner for an award of benefits is proper.

## CONCLUSION

Based on the foregoing discussion, the court should find the ALJ improperly concluded plaintiff was not disabled. Accordingly, this court should reverse the second ALJ's decision and remand this matter to the Commissioner for an award of benefits.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **July 29, 2005**, as noted in the caption.

DATED this 5th day of July, 2005.

/s/ Karen L. Strombom
Karen L. Strombom
United States Magistrate Judge